NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALLAN B. COSTELLO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 05-3344 (AET) |
| | : | |
| PUBLIC SERVICE ENTERPRISE GROUP; | : | **MEMORANDUM & ORDER** |
| PSEG POWER LLC; and | : | |
| PSEG FOSSIL LLC, | : | |
| | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter comes before the Court on Defendants[1] PSEG Power, LLC and PSEG Fossil, LLC's (collectively, "PSEG") Motion for Summary Judgment. The Court has decided this Motion after reviewing the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, Defendants' Motion is granted.

BACKGROUND

This employment case concerns a dispute over alleged family leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the New Jersey Family Leave Act ("NJFLA"), N.J. Stat. Ann. § 34:11B-1 et seq. On November 28, 1980, Plaintiff Allan B. Costello began working for PSEG at the Burlington Generating Station, an oil plant. In 1995 or 1996, Plaintiff began working as a Technical Operator. On September 30, 2002,

---

[1]  Plaintiff voluntarily dismissed all claims against Defendant Public Service Enterprise Group by a Stipulation of Dismissal filed on October 5, 2006.

Plaintiff voluntarily transferred to PSEG's Mercer Generating Station, a coal plant, along with two other Burlington technical operators, Matthew Merrifield and Rick Cramer. Prior to Plaintiff's transfer, he had been working a "shift schedule": a four week rotation in which employees worked four straight twelve-hour days, followed by seven days off, followed by four straight twelve-hour nights, followed by three days off, followed by three straight twelve-hour days, followed by one day off, followed by three straight twelve-hour nights. The rotation would then begin again. When Plaintiff transferred to Mercer, he was initially assigned to the day shift: Monday through Friday, 7:00 a.m. to 3:00 p.m. After the initial training period at Mercer, Plaintiff, Merrifield, and Cramer all intended to work a shift schedule.

During Plaintiff's training period, he took approximately twenty-two days of leave from work, which included at least one "emergency leave-of-absence in February 2003 to care for his father."[2] (Pl.'s Resp. to Defs.' Rule 56.1 Statement of Material Facts ("Pl.'s Resp.") ¶ 16.) When Plaintiff took this February 2003 leave, he claims he told his interim manager, Mr. Gerbis, that he needed leave because "he was having some issues with his father's care at that time." (Pl.'s Statement ¶ 8.) Plaintiff claims that his elderly father began having mental problems in mid-2001 that became progressively worse and were eventually diagnosed in September 2003 as "moderate dementia and Alzheimer's disease." (Pl.'s Statement ¶ 7.)

PSEG states that, after Plaintiff began working at Mercer, the Operations Manager, Susan Kidd, along with another manager and the Chief Steward of Costello's labor union, Rick Kerstetter, all met to develop a list of tasks that Technical Operators would be required to

---

[2] While Plaintiff was at Burlington, he had also taken a two-week leave of absence at the end of 2001 or beginning of 2002 to care for his father. (Pl.'s Rule 56.1 Statement of Material Facts ("Pl.'s Statement") ¶ 8.)

perform independently before being transferred to a shift shedule. (Defs.' Rule 56.1 Statement of Material Facts ("Defs.' Statement") ¶ 20.) PSEG claims that it gave Plaintiff the list, but that he refused to cooperate by meeting with the Technical Supervisor, Thomas Kirkham, to identify and plan for the areas in which he needed additional training. (Defs.' Statement ¶¶ 23-27.) Still, Plaintiff complained about not being assigned to a shift schedule. Plaintiff claims that he told the human resources department as well as the Station Manager, Steven Marbaise, that his non-shift schedule was "making it difficult for him to give [his father] proper care." (Pl.'s Statement ¶ 11.) In late May 2003, Merrifield and Cramer were assigned to a shift schedule, but Plaintiff was not.

On July 3, 2003, Plaintiff submitted a letter to Marbaise. The entirety of the letter states:

Dear Steve:
    I spoke with you three weeks ago regarding my transfer to shift. At that time, I indicated to you that being on steady days was causing problems regarding the care of my elderly father along with the loss of approximately $165 per week in built-in overtime, shift premium and additional travel expenses. You promised to look into it, but as of today, I have received no response.
    I would like to reiterate my qualifications, which are as follows:
        1) I have spent my entire PSE&G career in the technical or electrical field.
        2) I have been a technician from 1989 until the creation of the technical operator classification.
        3) I am the only shift technician at Mercer who has been through the six month technician course.
        4) I held an N-2 Industrial Wastewater License until I let it lapse about three years ago and I could easily acquire one.
        5) I have prior outside experience as an electrician for a contractor and in the U.S. Navy.
        6) I am a licensed electrical contractor in the State of New Jersey.
        7) I spent the last year at Burlington Station as the only technical operator on my shift, while the other shifts had two technical operators.
    I have left a packet with Karen Hancock, which contains details of my outside qualifications. She will hand deliver these to you on Monday.
    I will no longer be reporting for day work and I will consider Friday, July 4, 2003, through Thursday, July 10, 2003, as my scheduled shift days off. I will report for my regular shift at 1800 hours on Friday, July 11, 2003.

> I have contacted a lawyer, and unless I am allowed to report for shift duty, I will be pursuing a lawsuit along the lines of age discrimination, harassment and breach of contract.
> Thank You for your anticipated cooperation.
>
> Sincerely,
> Allan B. Costello

(Anderson Cert. Ex. 10.) After Marbaise received the letter, he sent letters to Plaintiff by Certified Mail and hand delivery, instructing him to return to work immediately, or face termination. One of Plaintiff's supervisors drove to Plaintiff's home to hand deliver one of the letters, and told Plaintiff that he "need[ed] to come to work." (Defs.' Statement ¶ 45; Groze Dep. 26:1-16, Nov. 1, 2006, attached as Ex. 6.) PSEG claims, and Plaintiff does not dispute, that Plaintiff replied, "I know," but said nothing else. (Id.) PSEG also claims, and Plaintiff does not dispute, that the same supervisor telephoned Plaintiff several times regarding his absence from work, but Plaintiff did not return. (Defs.' Statement ¶ 46; Groze Dep. 22:7-14.)

As Plaintiff had stated in his July 3, 2003 letter, he reported to work on July 11, 2003. Marbaise met Plaintiff at the entrance, however, and informed him that he had been suspended. PSEG claims it then assigned Mercer's Senior Plant Engineer, Thomas Scott, to conduct an investigation into the facts and circumstances of Plaintiff's absence. (Defs.' Statement ¶ 50.) Pursuant to the collective bargaining agreement between PSEG and Plaintiff's labor union, PSEG also conducted a fact-finding conference wherein Marbaise and Scott questioned Plaintiff about his conduct and allegations. Following the investigation and conference, PSEG terminated Plaintiff's employment effective August 1, 2003, citing failure to report to work and "insubordinate misconduct." (Anderson Cert. Ex. 15.) From July 3, 2003, through Plaintiff's termination on August 1, 2003, he submitted no other documentation to PSEG regarding the

absence other than his July 3, 2003 letter, nor did PSEG request any specific documentation.

On July 1, 2005, Plaintiff filed a Complaint alleging interference and wrongful discharge in violation of the FMLA and the NJFLA.  (Compl. ¶¶ 17-33.)  PSEG's Motion for Summary Judgment followed.

## DISCUSSION

PSEG argues that Plaintiff has failed to establish causes of action for interference with his FMLA and NJFLA rights and for wrongful discharge because, inter alia, he did not give notice of his intention to take family leave.  Rather, PSEG asserts, Plaintiff simply informed it of his intention to unilaterally assign himself to a shift schedule, from his then-current day schedule.  Plaintiff counters that a reasonable factfinder may determine that his July 3, 2003 letter was sufficient to notify PSEG that he was taking family leave, and to invoke the protections of the FMLA and the NJFLA.  Because the Court finds that no rational trier of fact could conclude that Plaintiff sufficiently exercised his family leave rights with his July 3, 2003 letter, the Court grants PSEG's Motion.

A.      Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  The moving party may cite to the pleadings, depositions, answers to interrogatories, or admissions on file, to demonstrate that no genuine issue of material fact

exists and that the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."  Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

B.   Plaintiff's FMLA and NJFLA Claims[3]

The FMLA was enacted to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for . . . the care of a . . . parent who has a serious health condition," while "accommodat[ing] the legitimate interests of employers."  29 U.S.C. § 2601(b)(1)-(3).  The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the . . . parent[] of the employee, if such . . . parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Employers may not interfere with, restrain, or deny an employee's FMLA rights and are prohibited from discharging or discriminating against any eligible employee who exercises those rights.  29 U.S.C. § 2615(a).  The Court will consider Plaintiff's interference and wrongful discharge claims in turn.

1.   Interference Claims

Plaintiff claims that PSEG interfered with his FMLA rights by disciplining and discharging him for taking alleged family leave.  PSEG argues that Plaintiff's July 3, 2003 letter

---

[3]   The parties agree that courts generally apply similar analyses in considering FMLA and NJFLA claims.  Because the Court determines that insufficient evidence exists to permit a reasonable factfinder to conclude that Plaintiff adequately exercised his family leave rights, the Court will analyze Plaintiff's FMLA claims and NJFLA claims under the FMLA standard.  See, e.g., Washington v. Cooper Hosp., No. 03-5791, 2005 U.S. Dist. LEXIS 31062, at *28 (D.N.J. Dec. 2, 2005) ("The NJFLA is similar to the FMLA in terms of its notice and entitlement provisions).

did not inform it that Plaintiff was taking family leave, but rather, that Plaintiff desired a different work schedule, and had decided to unilaterally assign himself to one.  Thus, PSEG concludes, Plaintiff did not exercise FMLA rights in his absence from work in July 2003, and thus, it did not discharge him for taking family leave.

The FMLA regulations state that an employee taking FMLA leave must provide, at a minimum, "at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).  If the need for leave is unforeseeable, the regulations state that the employee should notify the employer "as soon as practicable." 29 C.F.R. § 825.302(c).  Although the regulations do not define "sufficient notice," the employee must give his employer enough information to "reasonably apprise it of the employee's request to take time off for a serious health condition." Manuel v. Westlake Polymers, Corp., 66 F.3d 758, 764 (5th Cir. 1995); see also Washington, 2005 U.S. Dist. LEXIS, at *19; McCarron v. British Telecom, No. 00-6123, 2002 U.S. Dist. LEXIS 15151, at *15 (E.D. Pa. Aug. 7, 2002).

Here, Plaintiff did not request any kind of leave from work, let alone family leave. Instead, as PSEG notes, Plaintiff desired a different work schedule, and on July 3, 2003, announced his intention to report to work pursuant to that schedule, effective immediately. (Anderson Cert. Ex. 10.)  Although Plaintiff argues now that he needed, and took, family leave for those seven days in July 2003 in order to care for his ailing father, the letter clearly explains that he was taking "Friday, July 4, 2003, through Thursday, July 10, 2003, as [his] scheduled shift days off."  (Id.)  Nowhere in the letter does Plaintiff request or announce leave from his then-current day schedule.  Indeed, he explicitly states that he would "no longer be reporting for

day work." (Id.) The Court is unconvinced that a rational factfinder could conclude, without more, that scheduled days off are synonymous with family leave from work. While Plaintiff may have been motivated, at least in part, by his need to care for his father in changing his schedule, his stated reason for the absence was that he considered those days his "scheduled shift days off." (Id.) Not coincidentally, a stretch of seven days off occurs at the beginning of a "shift schedule," which Plaintiff claimed to begin on July 3, 2003. (Id.) Plaintiff stated that he would return to work at 1800 hours (6:00 p.m.) on July 11, 2003. (Id.) This would have been consistent with a "shift schedule," following seven days off with four straight twelve-hour nights, and inconsistent with Plaintiff's day schedule of Monday through Friday, 7:00 a.m. to 3:00 p.m.

Moreover, the bulk of Plaintiff's letter addresses his qualifications to be assigned as a Technical Operator on a shift schedule, not any personal or family health issue. Thus, the only portion of the letter that even could indicate a "serious health condition" of a family member is Plaintiff's statement that, "being on steady days was causing problems regarding the care of my elderly father." (Id.) Plaintiff does not dispute that he did not give PSEG any more information at the time of his absence other than the July 3, 2003 letter. Plaintiff argues, however, that his father's condition was "well-known" at Mercer, and it was "also well-known that he was having problems taking care of his father due to his work schedule." (Pl.'s Statement ¶ 9.) Even assuming the truth of Plaintiff's unsupported statement, it does not follow that simply because PSEG knew Plaintiff cared for an ailing parent, any absence at any time should be considered FMLA leave, especially when Plaintiff gave a wholly separate explanation for this absence: scheduled days off as part of a new work schedule.

Courts have determined that when employees give their employers insufficient and vague

information about their absences from work, the employer may have a duty to inquire as to the true reason for the absence, but "the employer is not required to be clairvoyant." <u>Satterfield v. Wal-Mart Stores, Inc.</u>, 135 F.3d 973, 980 (5th Cir. 1998); <u>see</u> also <u>Johnson v. Primerica</u>, No. 94-4869, 1996 U.S. Dist. LEXIS 869, at *6 (S.D.N.Y. Jan. 30, 1996).  Here, finding Plaintiff's July 3, 2003 letter sufficient to constitute an exercise of FMLA rights would require PSEG to be not only clairvoyant, but to disbelieve the precise reason Plaintiff offered for his absence, and conclude instead, based upon alleged knowledge that he cared for an ailing father, that he intended to take FMLA leave instead of scheduled days off.  The Court will not impose such a requirement.  See <u>McCarron</u>, 2002 U.S. Dist. LEXIS 15151, at *21-22 (holding that the plaintiff's request for leave to attend to a "family situation," without any other information given to the employer, was insufficient to permit a reasonable jury to find sufficient notice under the FMLA).  Here, "[t]here was no reason for [PSEG] to believe anything else concerning Plaintiff's [absence] except what Plaintiff told them": he wanted a new work schedule, and if PSEG was not going to give it to him, he was going to take it.  <u>Id.</u>

   While Plaintiff may argue that an emergency need to care for his father necessitated his absence from work, and prevented him from giving PSEG more information about his absence, (Pl.'s Statement ¶ 14), what is practicable in terms of the content of the notice to an employer depends on the facts and circumstances of the individual case.  29 C.F.R. § 825.303.  It is relevant here that Plaintiff admits he previously requested "leaves of absence" from work to care for his father, without incident. (Pl.'s Statement ¶ 8.)  Plaintiff does not state that those "leaves of absence" were accomplished through shift changes, and further, Plaintiff states that he told PSEG at the times of those absences that they were needed to enable him to care for his father.

(Id.)  Plaintiff clearly knew how to successfully request family leave, but did not do so here.

Considering all of the above facts and circumstances, no reasonable trier of fact could conclude that the information Plaintiff provided to PSEG about his July 2003 absence constituted an exercise of FMLA rights.  Therefore, PSEG's Motion for Summary judgment of Plaintiff's interference claims is granted.

### 2. Wrongful Discharge Claims

To establish a wrongful discharge claim under the FMLA, Plaintiff must show that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Conoshenti v. PSEG, 364 F.3d 135, 146 (3d Cir. 2004).  Under the NJFLA, Plaintiff must show, among other elements, that he "took or sought to take leave from [his] employment to care for [his] injured relative." Tucker v. County of Monmouth, 159 Fed. Appx. 405, 408 (3d Cir. 2005).  For the reasons discussed above, Plaintiff has not presented sufficient evidence to permit a reasonable factfinder to conclude that he took family leave protected by the FMLA or the NJFLA.  Therefore, PSEG's Motion for Summary Judgment of Plaintiff's wrongful discharge claims is also granted.

### CONCLUSION

For the foregoing reasons and for good cause shown,

It is on this 30th day of August, 2007,

**ORDERED** that Defendants' Motion for Summary Judgment [18] is **GRANTED**.

                                            s/ Anne E. Thompson
                                          ANNE E. THOMPSON, U.S.D.J.